MICHAEL COX, Plaintiff-Appellant, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF DANVILLE *et al.*, Defendants-Appellees.

Fourth District   Nos. 17527, 17610 cons.

Opinion filed July 8, 1982.

MILLS, J., dissenting.

Thomas H. McGary Law Offices, of Springfield (Donald A. LoBue, of counsel), for appellant.

Hardin W. Hawes, of Sebat, Swanson, Banks, Lessen and Garman, of Danville, for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Plaintiff, Michael Cox, filed notice of appeal from two orders of the circuit court of Vermilion County, each purporting to dismiss, as not having been timely commenced, plaintiff's suit brought under the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 264 *et seq.*) seeking review of a decision of defendant, the Board of Fire and Police Commissioners of the City of Danville (Board), discharging him from his employment as a police officer of that city.

The first notice of appeal was filed October 14, 1981, and was from an order entered by pronouncement in open court on September 16, 1981. The second notice of appeal was filed November 16, 1981, and was from a written order filed October 20, 1981, giving a slightly different rationale for the dismissal. The appeals have been consolidated. We conclude the case is properly before us on one of the notices of appeal. We affirm.

The facts bearing upon the timeliness of the institution of the suit are not in dispute. Prior to May 12, 1981, defendant Board had before it a petition requesting plaintiff's discharge. After the Board had originally found plaintiff not guilty of charges made against him, the decision had been appealed to the circuit court and then remanded to the Board for further proceedings. On May 12, 1981, the Board reconsidered the matter and on May 13, 1981, entered an order discharging plaintiff. On May 13, 1981, copies of the order were placed into the United States mail in envelopes with proper postage thereon and addressed to plaintiff and his attorney. They received the documents on May 15, 1981. On June 17, 1981, at about 9:30 a.m., plaintiff's attorney presented his complaint in administrative review to the office of the clerk of the circuit court of Vermilion County together with unsigned summonses directed to each of

the proper parties defendant to the administrative review sought. Affidavits as to the addresses of all of the parties were presented. The summonses were not signed on behalf of the clerk until the next day, June 18, 1981, at which time the summonses were sent by mail to the respective defendants.

Section 4 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 267) states that an action for review under the Act "shall be *commenced* by the *filing* of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was *served* upon the party affected thereby." (Emphasis added.) The parties are in dispute concerning the legal questions as to (1) when was a copy of the decision "*served*" on plaintiff, and (2) when was the proceeding for review in the circuit court "*commenced.*"

With reference to the decisions of administrative agencies such as the Board, section 4 of the Administrative Review Act states in part:

> "The method of service of the decision shall be as provided in the Act governing the procedure before the administrative agency, but if no method is provided, a decision shall be deemed to have been served either when *personally delivered* or when *deposited in the United States* mail, in a sealed envelope or package, with postage prepaid, addressed to the party affected thereby at his last known residence or place of business." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 110, par. 267.)

The Act governing procedure before the Board (Ill. Rev. Stat. 1979, ch. 24, par. 10—2.1—17) makes no provision for method of service. Thus, it would appear that, here, the parties affected were "*served*" by the Board's decision and the 35-day period to "*commence*" review started on May 13, 1981, when copies of the Board's order were placed in the mail. However, plaintiff presents two arguments to support his contention that he was not "served" until he received a copy of the order on May 15, 1981.

First, plaintiff relies upon dictum in *Pearce Hospital Foundation v. Illinois Public Aid Com.* (1958), 15 Ill. 2d 301, 154 N.E.2d 691, where the court held that a party could not extend its time for seeking review under the Administrative Review Act by filing a petition with the administrative agency for reconsideration of its order. In the course of the opinion, the court stated:

> "Had judicial review been sought within 35 days after appellees had *received* the administrative decision, the court in which relief was sought would have had the power to affirm or reverse the decision, or to remand it to the commission for further hearing if the need therefor was found to exist." (Emphasis added.) 15 Ill. 2d 301, 306, 154 N.E.2d 691, 694.

Plaintiff points out that the quoted language from *Pearce* was cited in

*A-1 Security Services, Inc. v. Stackler* (1978), 61 Ill. App. 3d 285, 377 N.E.2d 1199, but that case concerned the administrative review of a decision of the Department of Registration and Education revoking detective licenses. There, the legislation governing the procedure before the agency (Ill. Rev. Stat. 1975, ch. 38, par. 201—21) provided for service of the decision by personal delivery or registered mail and made no statement as to when the service was deemed to have taken place. Date of receipt was held to be the date of service.

Plaintiff also relies upon *Varnes v. Lentz* (1975), 30 Ill. App. 3d 806, 332 N.E.2d 639, where the issue before the court was whether an administrative order was final. The opinion noted that *Pearce* had held that proceedings for review under the Administrative Review Act had to be started within 35 days of "the date that a copy of the final decision sought to be reviewed was *served* upon the party affected thereby." (Emphasis added.) (30 Ill. App. 3d 806, 810, 332 N.E.2d 639, 643.) Not only was the foregoing statement dictum but it used the word "served" rather than received. Thus, the statement did nothing to resolve the question of whether a copy of the decision is served when mailed or when received.

On the other hand, *Chin v. Department of Public Aid* (1979), 78 Ill. App. 3d 1137, 398 N.E.2d 135, and *Thompson v. Illinois Civil Service Com.* (1978), 63 Ill. App. 3d 153, 379 N.E.2d 655, directly hold that unless the Act governing the procedure provides for other method of service than that provided in the Administrative Review Act, the copy of the administrative order is served when mailed. Plaintiff argues that we should follow the statement in *Pearce* as appropriate authority rather than *Chin* or *Thompson*. However, as the statement in *Pearce* was dictum, we need not follow it. We do not consider *A-1 Security Service* or *Varnes* to be on point. We consider *Chin* and *Thompson* to be logically reasoned and to follow the expressed meaning of section 4.

In arguing that the copy of the Board order was not served when mailed, plaintiff also seeks support from Supreme Court Rule 12(c) (73 Ill. 2d R. 12(c)), which states that "[s]ervice by mail is complete four days after mailing." He contends that rule is applicable because of section 14 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 277) stating that the Supreme Court Rules "apply to all proceedings" under that Act, but that same sentence further states, "except as otherwise provided in this Act." Section 4 of the Act provides otherwise and states that the copy of the decision is served when mailed unless otherwise provided in the Act governing the administrative agency.

■■ We hold that the trial court correctly determined the copy of the order was served on May 13, 1981, when mailed, and the 35-day period for commencing the review proceedings started to run at that time. See

*Summers v. Illinois Commerce Com.* (1978), 58 Ill. App. 3d 933, 374 N.E.2d 1111; *Fletcher v. Civil Service Com.* (1972), 6 Ill. App. 3d 593, 286 N.E.2d 130.

The parties do not dispute that in computing the 35-day period of section 4, the first day should be excluded and the last day included. (Ill. Rev. Stat. 1979, ch. 1, par. 1012.) Upon this basis Wednesday, June 17, 1981, was the 35th and last day to commence the review in the circuit court. That was the day plaintiff's complaint for administrative review was filed but it was the day before June 18, 1981, when the summonses were signed on behalf of the circuit clerk. Section 4 states that not only must the complaint be filed within the 35-day period but the summons must also be issued within that period. Regardless of what acts are required to constitute the issuance of a summons, clearly no summons was issued here until June 18, 1981. We thus come to the question as to whether the apparent requirement of issuance of summons should be disregarded.

In support of his argument that the requirement for issuance of summons within the 35-day period be disregarded, plaintiff cites language in various cases which recites that the only thing required to be done within the 35-day period was the filing of the complaint. (*Norris v. City of Aurora* (1978), 64 Ill. App. 3d 748, 381 N.E.2d 996; *Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1976), 45 Ill. App. 3d 116, 359 N.E.2d 174; *Dendor v. Board of Fire & Police Commissioners* (1973), 11 Ill. App. 3d 582, 297 N.E.2d 316; *Hailey v. County Board of School Trustees* (1959), 21 Ill. App. 2d 105, 157 N.E.2d 570.) In none of the cases was any issue raised as to whether a summons had been timely issued. Rather, the issue was whether new parties, some of which were necessary, could be brought in after the 35-day period, and reviewing courts held they could.

Plaintiff also cites cases from other jurisdictions where both filing of the complaint and issuance of summons was required to commence a case. The courts deemed the filing of the complaint together with a direction to the clerk to issue summons to be sufficient compliance. (*Hagy v. Allen* (E.D. Ky. 1957), 153 F. Supp. 302; *State ex rel. Bair v. Producers Gravel Co.* (1937), 341 Mo. 1106, 111 S.W.2d 521; *State ex rel. Evans v. Broaddus* (1912), 245 Mo. 123, 149 S.W. 473.) *Hagy* dealt with the procedural law of Kentucky. The opinion implied that the attorney filing the complaint near the deadline had advised the clerk of the necessity of immediate issuance of the summons to satisfy the statutory deadline.

■■ In the case before us, counsel for the plaintiff had presented the complaint and all of the necessary documents to the clerk of the court on the last day for commencement of the proceeding. Thus, counsel had done most of the things necessary to assure immediate issuance of

summons. However, there is no indication here that the clerk's office personnel were informed that summons was required to be issued that day in order for the administrative review to have been timely commenced. Issuance of a summons the day after the filing of a complaint would not ordinarily be dilatory. Had the clerk's personnel been advised of the exigencies of the circumstances and then failed or refused to issue summons immediately, as apparently occurred in *Hagy*, a strong case would be made for disregarding the requirement that summons issue, but we need not decide what the ruling would be under those circumstances. In the absence of such a showing, we must follow the plain wording of section 4.

Because both the filing of the complaint and the issuance of summons did not take place within 35 days of the service of a copy of the Board's decision, the trial court properly dismissed the complaint for administrative review.

Accordingly, we affirm.

Affirmed.

LONDRIGAN, J., concurs.

JUSTICE MILLS, dissenting:
Cox has lost his job and is now denied review—perhaps for no better reason than that someone in the clerk's office put off until tomorrow what could have been done on the 35th day.

Our supreme court has said, " 'Rules of procedure are not ends in themselves; they are designed to secure orderly and fair methods of disposing of litigated matters.' " (*People ex rel. Southfield Apartment Co. v. Jarecki* (1951), 408 Ill. 266, 273, 96 N.E.2d 569, 572, quoting *People ex rel. Pickerill v. New York Central R.R. Co.* (1945), 391 Ill. 377, 63 N.E.2d 405.) The court has also stated that, "A situation within the object, spirit and meaning of [a] statute falls within it, although it may be without the letter of the law." *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568, 575, 369 N.E.2d 1279, 1282.

The obvious purpose of a 35-day filing rule is to encourage prompt action by the aggrieved party so that timely dispositions of a matter may be made. This purpose was fulfilled in the present case. There is no apparent purpose for requiring that the filing be made sooner than 35 days after service of a copy of the decision so that the summons can be issued within 35 days. This only serves to punish a plaintiff for less than ideal operations at the clerk's office. A "trap for the unwary" if ever there was one.

With respect to the former Civil Practice Act, Illinois courts have

always held a liberal viewpoint when construing the Act. A notable example is *Campbell v. Fazio* (1959), 23 Ill. App. 2d 106, 110, 161 N.E.2d 579, 581, where the court said:

> "Our courts in their interpretation of the Practice Act have been reluctant to deny any litigant his day in court and they have avoided any harsh construction of the rules. In keeping with the intent of the Practice Act and the rules adopted thereunder, no attempt has been made to require a 'strict letter of the law' compliance with the Act or the rules, but rather there has been a liberal construction and interpretation. *Appeals have been dismissed only where there has been an omission or failure that is flagrant in its character.*" (Emphasis added.)

This is merely a filing rule. It should be clear and straightforward because there will quite often be important rights affected, as in this case. A liberal construction is especially appropriate here because the Act's subtleties impose a great injustice on the plaintiff, whereas the prejudice to the defendant is nil.

The following quotations are from two cases involving section 4 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 267) in which the plaintiffs' complaints were filed after 35 days. However, the appellate court in both cases indicated that filing on the 35th day would have been sufficient to obtain review.

> "This 35-day limit is a jurisdictional requirement [citation], and a plaintiff who fails to file a complaint within the specified period is time-barred from seeking review of the agency decision. [Citation.]
>
>            *   *   *
>
> In short, once plaintiff received notice via certified mail *  *  * of the director's suspension order, his only recourse was to file an administrative review action within 35 days." *Hoffman v. Department of Registration & Education* (1980), 87 Ill. App. 3d 920, 924-25, 410 N.E.2d 291, 293-94.
>
> "Under the provisions of that Act, a plaintiff must file a complaint with[in] 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected." *Varnes v. Dougherty* (1976), 39 Ill. App. 3d 476, 479, 350 N.E.2d 6, 9.

The import of this language is that if the plaintiffs had filed within 35 days, they would have had their cases reviewed in the circuit court. In the present case, plaintiff filed within 35 days.

I believe he is entitled to an appeal.

Therefore, I dissent.