(No. 33575.—

THE PEOPLE *ex rel.* William A. Schuwerk, State's Attorney, Appellee, *vs.* ILLINOIS MUNICIPAL RETIREMENT FUND *et al.,* Appellants.

*Opinion filed September 23, 1955.*

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., MARK O. ROBERTS, LUCIEN S. FIELD, of counsel,) for appellants.

WILLIAM A. SCHUWERK, State's Attorney, of Chester, (JOHN A. HEUER, of Chester, of counsel,) for appellee.

Mr. CHIEF JUSTICE HERSHEY delivered the opinion of the court:

This is an appeal from the circuit court of Randolph County, which in a *quo warranto* proceeding ousted the trustees of the Illinois Municipal Retirement Fund from exercising jurisdiction over the city of Chester and its employees.

On December 12, 1952, the city of Chester adopted an ordinance electing to participate in the Illinois Municipal Retirement Fund, as provided in section 4(a)3 of the Illinois Municipal Retirement Fund Act. (Ill. Rev. Stat. 1951, chap. 24, par. 1178(a)3.) Further in pursuance of said statute, a certified copy of this ordinance duly authenticated and certified by the city clerk was sent to offices of the Fund, being received there on December 22, 1952. However, on October 5, 1953, the city adopted an ordinance purporting to repeal the former ordinance and to rescind its participation in the Fund. Although in April, 1953, the city filed with the Fund some of the requested forms, it

never fully complied with such requests for information. Accordingly, the rate was never established and no contributions were in fact made, either by the city or its employees.

The trial court, in entering judgment for the plaintiff, was of the opinion that the subsequent ordinance was valid and effective to repeal the prior ordinance and to rescind the city's participation in the Fund. Therefore, it was held that the trustees of the Fund had no right to exercise jurisdiction over the city of Chester and its employees.

The trial court certified that the validity of a municipal ordinance is involved and that the public interest requires a direct appeal to this court.

The issue may be stated as follows: Can the city of Chester, after having elected to participate in the Illinois Municipal Retirement Fund in the manner prescribed by statute, and after having filed some of the required papers and forms, but prior to filing all of them and prior to making any contributions of money to the Fund, repeal the ordinance by which it elected to participate, and withdraw from the Fund?

We believe the question must be answered in the negative because: (1) the city of Chester by ordinance elected to participate in the Illinois Municipal Retirement Fund, and such participation became effective on January 1, 1953. (2) After once having elected to participate in the Fund, the city was without authority to withdraw therefrom by the ordinance of October 5, 1953.

First, by the terms of the Illinois Municipal Retirement Fund Act, a city with a population of 10,000 or less (as is the city of Chester) may elect to participate either by referendum or by the adoption of an ordinance or resolution. (Section 4(a)3.) If participation occurs by adoption of an ordinance, a copy of such ordinance duly authenticated and certified by the clerk of the city consti-

tutes the required notice to the board of trustees of the Fund of such participation. In addition, section 4(a)1, which relates to the time of participation, provides that the effective date of participation of a municipality so electing shall be the first day of January of the year after the year in which said official notice is received by the Fund. The term "effective date" is defined in section 3(q) of the Act as follows: "(q) Effective Date: The date upon which the provisions of this fund become applicable to any participating municipality and to all instrumentalities thereof, as provided in section 4 hereof."

It is apparent that the city of Chester complied with these statutory requirements, and the effective date of its participation was January 1, 1953. For it is stipulated that the city adopted the participating ordinance on December 12, 1952, and a certified copy of the ordinance as signed by the mayor and attested by the city clerk was transmitted to offices of the Fund, being received there on December 22, 1952.

Appellee would have us hold that the city did not become an *active* participant prior to the so-called repealing ordinance, because it never furnished the necessary information for establishing the rate of contributions, nor were any contributions made. The language of the statute is . clear to the effect that when the city elects to participate in the manner therein outlined, its duties are fixed, including the obligation to furnish necessary information, *etc.* Certainly, its wrongful refusal to comply with the law should not enhance the city's position.

Second, once having so elected to participate, the city had no right to withdraw therefrom by the subsequently enacted ordinance which purported to repeal the participating ordinance.

The Illinois Municipal Retirement Fund Act (Ill. Rev. Stat. 1953, chap. 24, pars. 1175-1201,) is a complete statutory enactment providing a system for the payment of

annuities and other benefits to certain officers and employees, and to their beneficiaries, of municipal and local governmental units in this State. No part of the Illinois Municipal Retirement Fund therein created is to be supplemented or changed by municipal ordinance. Rather, a city (*i.e.,* a city with a population of 10,000 or less) may only elect whether or not to participate in the system. If it so elects by the adoption of an ordinance to that effect (as did the city of Chester), said ordinance makes the statute operative in that city. Finally, there is no provision in the law for a participating municipality to withdraw from the Fund.

In general, a city which has been granted the power to enact ordinances has, as an incident thereto and without any express reference thereto in the statutes, power to amend, change, or repeal ordinances. It is recognized, however, that this principle does not apply where the ordinance has been enacted under a narrow, limited grant of authority to do a single designated thing in the manner and at the time fixed by the legislature, which excludes the implication that the city was given any further authority over the subject than to do the one act. (37 Am. Jur., Municipal Corporations, sec. 197, p. 834; 62 C.J.S., Municipal Corporations, sec. 435, p. 835.) "In brief, no power of repeal exists as to an ordinance that ·constitutes the exercise of municipal power exhausted by its single exercise." 6 McQuillin, Municipal Corporations, 3d ed., sec. 21.10, p. 189.

There are no Illinois cases dealing with the authority of a municipality to withdraw from the Illinois Municipal Retirement Fund after having once elected to participate, but courts of other States have passed on analogous questions.

In *Thompson* v. *City of Marion,* 134 Ohio. St. 122, 16 N.E. 2d 208, a State statute authorized the creation of a pension system for policemen by municipalities upon declara-

tion by the municipality of a necessity for such fund. The statutory provisions contained a full and complete plan for the establishment, maintenance and administration of said fund. In holding that the city could not repeal the ordinance by which it elected to participate in the fund, the court said: "The pension system for policemen was not created by ordinance of the city of Marion. It is entirely of statutory creation and origin. * * * These statutory provisions constitute a full and complete plan for the establishment, maintenance and administration of such police pension fund which become effective and operative in any municipality of the state upon its appropriate declaration of a necessity therefor. No power of suspension, modification or repeal was conferred upon the municipality. It had only the power of determination of the question of necessity and when that was found in the affirmative its power was exhausted. * * * The general rule that the power to enact ordinances implies a power of repeal is inapplicable where the ordinance in question is enacted under a limited authority to do a certain thing in the manner and within the time fixed by the Legislature."

In *New York Employees' Retirement System* v. *Board of Supervisors of Tioga County,* 157 Misc. 87, 283 N.Y. Supp. 405 (affirmed 251 App. Div. 198, 296 N.Y.S. 286; affirmed 278 N.Y. 496, 15 N.E. 2d 434,) the Board of Supervisors of the County of Tioga adopted a resolution approving the inclusion of its officers and employees in the New York State Employees' Retirement System, which was created by State statute. This statute provided, in substance, that the officers and employees of any county should not be included in the retirement system without the approval of the board of supervisors of any such county, but if the board of supervisors gave its approval to the participation of the officers and employees of any such county, then such employees and officers would be eligible to participate. The board, two and one-half months after adopting the resolu-

tion of inclusion, adopted a resolution to rescind said prior resolution and the county refused to make contributions to the system. The court held that the board of supervisors had no power to rescind said resolution of inclusion in the retirement system, saying: "It is evident that the state, by appropriate legislation, attempted to create a retirement system for its officers and employees and those of such counties and municipalities as by appropriate action approved of the inclusion of its officers and employees. Clearly the Legislature intended this system to be permanent. It gave counties, cities, villages, and towns the right to elect to come in. It is significant that it gave them no power to withdraw. The apparent purpose being to create a permanent Retirement System, the power to withdraw cannot be implied. If it is, a municipality may repeatedly elect to come in or withdraw."

To the same effect is *City of Tucson* v. *Walker*, 60 Ariz. 232, 135 Pac. 2d 223. In that case, the city of Tucson, on July 21, 1941, adopted for its policemen the Police Pension Act of 1937 of the State of Arizona. On October 6, 1941, it adopted an ordinance which revoked its action of July 21, 1941. The court held that the city was bound by its action in adopting the provisions of this police pension fund statute and could not later rescind said action.

The foregoing decisions, the significant facts of which are virtually identical with those in the instant case, are persuasive; and the plaintiff has not cited any analogous cases which have been decided differently.

The judgment of the circuit court of Randolph County is reversed.                    *Judgment reversed.*